IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KENDA J. BUTLER,            )    CIVIL NO. 15-00466 HG-KSC
                           )
            Plaintiff,     )
                           )
        vs.                )
                           )
CAROLYN W. COLVIN, Social  )
Security Administration    )
Commissioner,              )
                           )
            Defendant.     )
_____ )

**ORDER AFFIRMING THE DECISION OF THE SOCIAL SECURITY
ADMINISTRATION COMMISSIONER**

This case involves the appeal of the Social Security Administration Commissioner's denial of Disability Insurance Benefits to Plaintiff Kenda J. Butler.

On March 26, 2012, Plaintiff filed an application for Disability Insurance Benefits pursuant to Title II of the Social Security Act.  Plaintiff claimed that she has been disabled since June 15, 2010 because of conditions affecting her spinal column.

The Social Security Administration denied her application. Following an administrative hearing, the Administrative Law Judge ("ALJ") held that Plaintiff was not disabled for a continuous period of at least 12 months following her onset disability date of June 15, 2010.  The Appeals Council denied Plaintiff's request for review and Plaintiff appealed to this Court.

1

The Court **AFFIRMS** the decision of the Social Security Administration Commissioner.

## PROCEDURAL HISTORY

On March 26, 2012, Plaintiff Kenda J. Butler filed an application for Disability Insurance Benefits with the Social Security Administration.  (Administrative Record ("AR") at 182-190, ECF No. 12).

On October 9, 2012, the Social Security Administration denied Plaintiff's initial application and on August 15, 2013, they denied her request for reconsideration.  (AR at pp. 125-28, 132-37).

Following the denial of Plaintiff's request for reconsideration, she sought a hearing before an Administrative Law Judge ("ALJ").  On February 24, 2014, an ALJ conducted a hearing on Plaintiff's application.  (AR at pp. 50-96).  On April 24, 2014, the ALJ issued a written decision denying Plaintiff's application.  (ECF No. 29-43).

Plaintiff sought review by the Appeals Council for the Social Security Administration.  (AR at pp. 8-28).  The Appeals Council denied further review of Plaintiff's application on September 29, 2015, rendering the ALJ's decision as the final administrative decision by the Commissioner of Social Security. (AR at pp. 2-4).

On November 5, 2015, Plaintiff sought judicial review of the Commissioner of Social Security's final decision to deny her application for Disability Benefits in this Court pursuant to 42 U.S.C. § 405(g).  (Complaint for Review of Social Security Disability Insurance Determination, ECF No. 1).

On March 3, 2016, the Magistrate Judge issued a briefing schedule.  (ECF No. 13).

On May 31, 2016, Plaintiff filed PLAINTIFF'S OPENING BRIEF. (ECF No. 14).

On July 13, 2016, Defendant filed DEFENDANT'S MOTION FOR FIRST EXTENSION OF 35 DAYS TO FILE THE ANSWERING BRIEF.  (ECF No. 16).

On July 15, 2016, the Magistrate Judge granted Defendant's Motion for First Extension to File the Answering Brief.  (ECF No. 17).  The Magistrate Judge also granted Plaintiff an extension of time to file her Reply brief.  (<u>Id.</u>)

On August 22, 2016, Defendant filed DEFENDANT'S ANSWERING BRIEF.  (ECF No. 18).

On September 1, 2016, Plaintiff filed PLAINTIFF'S REPLY BRIEF.  (ECF No. 19).

On October 11, 2016, the Court held a hearing on Plaintiff's appeal of the decision of the Social Security Administration Commissioner.  (ECF No. 21).

**BACKGROUND**

**Plaintiff's Work History Between 2001 And 2007**

Plaintiff is a 34 year-old female.  (Administrative Record ("AR") at p. 184, ECF No. 12).  Plaintiff is a high school graduate.  (Id. at p. 53).  Between 2001 and 2007, Plaintiff worked in various positions including restaurant work at Little Caesar's Pizza, conducting telephone surveys for a telemarketing company, teaching day care at a religious institution, clerical work with a staffing agency, and as an administrative assistant for a church.  (Id. at pp. 53-55).

Plaintiff stopped working in 2007 to take care of her children.  (Id. at p. 56).  Plaintiff is married and resides with her husband and their two minor children.  (Id. at pp. 37, 185).  At the time of the 2014 administrative hearing, Plaintiff's children were aged six and four.  (Id. at p. 37).

Plaintiff testified that she homeschooled her six year-old child.  (Id. at pp. 68-69).  Her four year-old child was not of school age at the time of her administrative hearing.  (Id. at p. 68).

**Plaintiff's June 2010 Surgery**

In June 2010, Plaintiff had surgery due to medical conditions that caused part of her brain to protrude into her

4

spinal column.  (Id. at pp. 325, 379-381).  Plaintiff's
conditions caused her to have double vision, headaches,
dizziness, eye twitching, and muscular weakness on the right side
of her body.  (Id. at pp. 303-305).

Following the surgery, Plaintiff's conditions improved but
she claimed that she still suffered from headaches, eye
twitching, double vision, and some right-weakness.  (Id. at pp.
58-59).

## Plaintiff's March 2012 Application For Social Security Disability Benefits

Nineteen months after her surgery, on March 26, 2012,
Plaintiff filed an application for Disability Insurance Benefits
pursuant to 42 U.S.C. § 423.  (AR at pp. 98-111, 184-90, ECF No.
12).

Plaintiff's application was denied and reconsideration was
denied by the Social Security Administration.  (Id. at pp. 125-
28, 132-37).  Following Plaintiff's request, a hearing was held
before an Administrative Law Judge ("ALJ").  (Id. at pp. 50-96).

The ALJ denied Plaintiff's application for Disability
Insurance Benefits, finding that Plaintiff had not met the
requirements set forth in 42 U.S.C. § 423.  (Id. at pp. 32-43).

42 U.S.C. § 423 establishes the statutory eligibility
requirements which an individual must satisfy to receive a
disability insurance benefit pursuant to the Social Security Act.

42 U.S.C. § 423(a)(1).  An individual is eligible to receive disability insurance benefits if the individual:

> (A)  is insured for disability insurance benefits as determined by 42 U.S.C. § 423(c)(1);
>
> (B)  has not attained retirement age;
>
> (C)  has filed an application for disability insurance benefits, and,
>
> (D)  is under a disability as defined in 42 U.S.C. § 423(d)(1)(A).

42 U.S.C. § 423(a)(1)(A)-(D).

The ALJ evaluated the four requirements of 42 U.S.C. § 423(a)(1).

First, the ALJ reviewed if Plaintiff was insured for disability insurance benefits pursuant to 42 U.S.C. § 423(c)(1). The ALJ determined that Plaintiff's earnings record showed that she had made disability insurance coverage payments.  Based on Plaintiff's work history between 2001 to 2007, the ALJ found that Plaintiff had acquired quarters of coverage to be insured until December 31, 2012.  (AR at p. 32, ECF No. 12).

Next, the ALJ found that Plaintiff fulfilled sections (B) and (C) of Section 423 because she had not reached retirement age at the time of her application and had properly filed an application for disability insurance benefits.

Finally, pursuant to 42 U.S.C. § 423(d), the ALJ examined Plaintiff's claim that she suffered from a disability before

6

December 31, 2012.[1]

42 U.S.C. § 423(d)(1)(A) provides, as follows:

The term "disability" means— inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Plaintiff claimed that she was disabled for a continuous period following June 15, 2010 due to the conditions affecting her spinal cord.  (AR at p. 184, ECF NO. 12).

The Administrative Law Judge determined that Plaintiff failed to establish that she had a disability that lasted or was expected to last at least twelve months between June 15, 2010 and December 31, 2012, the last date by which she was eligible for disability benefits.  (Id. at p. 34).

The ALJ found that Plaintiff was capable of performing her past relevant work as a daycare teacher, telemarketer, and administrative clerk.  (Id. at p. 41).  The Administrative Law Judge found, in the alternative, that there was also work that existed in significant numbers in the economy that Plaintiff could perform.  (Id. at pp. 41-42).  The Administrative Law Judge relied on the testimony of a vocational expert to find that someone with Plaintiff's limitations could perform work as an

---

[1] December 31, 2012 is the date that Plaintiff's disability insured status ended. The evaluation of disability insured status is set forth in 42 U.S.C. § 423(c), 20 C.F.R. § 404.316.

Assembler, Inspector, and Marker.  (<u>Id.</u> at p. 42).

Plaintiff sought review of the Administrative Law Judge's decision with the Appeals Council, which declined Plaintiff's request for review and rendered a final administrative decision by the Commissioner of Social Security.  (<u>Id.</u> at pp. 2-4).

<b><u>STANDARD OF REVIEW</u></b>

A claimant is disabled under the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); <u>see</u> 42 U.S.C. § 1382c(a)(3)(A); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

A decision by the Commissioner of Social Security must be affirmed by the District Court if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole.  See 42 U.S.C. § 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>see also</u> <u>Tylitzki v. Shalala</u>, 999 F.2d 1411, 1413 (9th Cir. 1993).

## ANALYSIS

### I.   Plaintiff's History And Claimed Disability

The Administrative Record reflects that Plaintiff was born in August 1982.  (Administrative Record ("AR") at pp. 54, 354, ECF No. 14).  Plaintiff graduated from high school in 2000.  (AR at p. 53).

#### A.   Plaintiff's Employment History From 2001 To 2007

After graduation from high school, Plaintiff was employed part-time at Little Caesar's Pizza and also worked for a telemarketing company conducting telephone surveys between 2001 and 2002.  (AR at pp. 53-54).  Plaintiff testified that she also briefly worked with children teaching kindergarten at a religious entity.  (AR at p. 54).

From 2004-2007, Plaintiff worked as an administrative assistant for a church and performed clerical work through a staffing agency.  (AR at pp. 54-55).

Plaintiff testified that she stopped working in 2007 in order to raise her children.  (AR at p. 56).

#### B.   Plaintiff's Surgery In 2010

Three years after Plaintiff stopped working, on June 18, 2010, Plaintiff went to the hospital experiencing headaches,

9

dizziness, and numbness in the right side of her body.  (AR at pp. 303-05, 322).  A magnetic resonance imaging ("MRI") of her brain and spine was conducted.  The MRI showed a protrusion of Plaintiff's brain into her spinal column with lesions on her spinal cord and degeneration of some of the discs in her spine. (AR at pp. 325, 379-381).

Plaintiff was diagnosed with Chiari I type malformation[2] with syringohydromyelia[3] of her spinal cord and disc degeneration.  (AR at p. 325).

On June 25, 2010, Plaintiff underwent surgery to relieve the protrusion into her spinal column, which improved the numbness, dizziness, and double vision that Plaintiff had been experiencing.  (AR at pp. 348-361, 399-400, 1156).

## II. Plaintiff's Condition Following Surgery In June 2010

### A.   Objective Medical Evidence Following Surgery

Following Plaintiff's June 25, 2010 surgery, Plaintiff had MRI scans of her brain and spine conducted in September 2010, March 2011, and April and May 2011.  (AR at pp. 715-18, 1866).

_____

[2] Chiari type I malformation is defined as a congenital anomaly in which the cerebellum and medulla oblongata protrude outside the cranium and into the spinal canal.  See Dorland's Illustrated Medical Dictionary 1050 (29th ed. 2000).

[3] Syringomyelia is a neurological deficit in the spinal cord that results in lesions causing numbness and muscle weakness. Dorland's Illustrated Medical Dictionary 1775 (29th ed. 2000).

The MRI records demonstrated that Plaintiff had positive results from the surgery with improvement of the conditions affecting her spinal column. (AR at pp. 715-18, 1866). The MRI results showed stable postoperative changes with significant reduction in the protrusion into her spinal column, improvement in the lesions on her spinal cord and stability in the degeneration of discs in her spine. (AR at pp. 38, 715-18, 1866).

Dr. Leon Liem was Plaintiff's surgeon. Dr. Liem examined Plaintiff a year after the surgery on June 20, 2011, and again on October 24, 2012. (AR at pp. 1621-24). Dr. Liem made objective findings in his clinical reports stating that Plaintiff had improvement in her spinal column conditions following surgery, was fully oriented with full strength, but Plaintiff continued to have some decreased sensation on her right side. (AR at pp. 1621, 1624).

Plaintiff's treating neurologist Dr. Todd Devere also conducted examinations of Plaintiff. In August 2012, Dr. Devere's clinical reports stated that Plaintiff had full strength in all extremities, intact cranial nerves, normal and symmetric muscles of expression, steady gait, intact reflexes, full visual fields, and neurological stability. (AR at pp. 1634-37). Dr. Devere found that Plaintiff's headaches were "tolerable and manageable." (Id. at pp. 1634-35).

Dr. Darnell Richey, the state agency medical consultant who

reviewed Plaintiff's claim for disability benefits in October 2012, determined that Plaintiff could perform light work with some restrictions due to her weaknesses in her right hand and visual field. (AR at p. 106). Dr. Richey stated that Plaintiff's medical records documented that she had a normal and "very stable" gait, improvement in her dizziness and double vision following her June 2010 surgery, and normal bulk, tone and strength in her extremities. (AR at p. 106).

On August 10, 2013, Dr. Blatowski, another state agency medical consultant, reviewed Plaintiff's records and agreed with Dr. Richey's conclusions as to Plaintiff's ability to perform light work. (AR at p. 122).

Plaintiff's primary care physician, Dr. Carolyn Fong, issued a letter to Plaintiff on March 5, 2013, indicating that Plaintiff had double vision, vertigo, and migraines and was unable to drive at night. (AR at p. 1677).

Dr. Fong's letter states that Plaintiff has restrictions in driving at night, but Dr. Fong did not indicate that Plaintiff could not drive at all. (AR at p. 1677). The March 2013 letter did not state that Plaintiff had any other limitations in her abilities, but, without explanation, she indicated that Plaintiff required more assistance in the evening. (AR at p. 1677).

On February 10, 2014, nearly three and a half years after Plaintiff's surgery and two years after Plaintiff filed her

12

application for disability benefits, Plaintiff's neurologist, Dr. Devere, examined Plaintiff again.  (AR at pp. 1679-84).  Dr. Devere completed a "Medical Source Statement of Ability To Do Work-Related Activities (Physical)" Form.  (AR at pp. 1679-84).

Dr. Devere indicated that Plaintiff could lift up to 20 pounds occasionally, sit for two hours at a time and four hours in an eight-hour day, stand for fifteen minutes at a time and 30 minutes total in an eight-hour day, walk 10 minutes at a time and 20 minutes in an eight-hour day, manipulate occasionally with the upper right extremity and frequently with the left, operate foot controls occasionally on the right and frequently on the left, and occasionally balance, stoop, and kneel.  (AR at pp. 1679-84).

Dr. Devere's recitation of Plaintiff's condition, in February 2014, indicated that Plaintiff was able to perform all work-related physical activities other than walk a block at a reasonable pace on rough or uneven surfaces.  (AR at p. 1684). But then Dr. Devere inconsistently stated that Plaintiff "is not able to work."  (AR at p. 1684).

Following Dr. Devere's evaluation, Plaintiff sought review of Dr. Devere's conclusions by her primary care physician Dr. Carolyn Fong.  Plaintiff obtained a two sentence letter from Dr. Fong, dated February 11, 2014, stating "I completely agree with Dr Todd Devere's assessment that this patient is disabled due to her medical conditions."  (AR at p. 1686).  Dr. Fong's two

13

sentence letter did not describe on what basis or to what extent she believed that Plaintiff is disabled.  (Id.)

## B.   Plaintiff's Activities Following Surgery

Plaintiff testified before the ALJ about her recovery following her June 25, 2010 surgery.  Plaintiff testified that she had some improvement but even as of the hearing on February 24, 2014, she still experiences symptoms such as eye twitching and headaches two times a week.  (AR at pp. 587-59).  Plaintiff stated that she treats the headaches with medications that will alleviate some of the pain.  (AR at pp. 58-59).  Plaintiff testified that her doctors have offered to prescribe her with other medications to treat the headaches such as antidepressants and narcotics.  (AR at pp. 58-59).  Plaintiff said she has been afraid to try other medications to treat her headaches.  (AR at p. 61).

Plaintiff testified that as of February 2014, she still experiences some dizziness and numbness in her right hand and right leg.  (AR at p. 57).  Despite her purported symptoms, Plaintiff stated that she does not use a cane to walk and is able to play the piano.  (AR at pp. 66, 70).  Plaintiff testified that she plays the piano a couple times a month for periods of 20 minutes.  (AR at p. 70).

Plaintiff testified that she is able to drive, go shopping,

and perform housework.  (AR at pp. 61, 67-68).

Plaintiff testified that she homeschools her six year-old child, which requires her to obtain the curriculum over the computer, read directions to her child, and enter relevant reporting information into the computer.  (AR at p. 68-69). Plaintiff's four year-old child was not yet in school at the time of Plaintiff's testimony.  (AR at p. 68).

Plaintiff stated that she attends Bible study, travels to the mainland to visit family, goes to the library, plays an "active role" in church, attends biweekly music practices, plays the piano, sings, and goes to the park.  (AR at pp. 69-70, 85-86, 242).

## III. Applicable Law

The Social Security Administration has implemented regulations establishing when a person is disabled so as to be entitled to benefits under the Social Security Act, 42 U.S.C. §§ 423, 1382c.  The regulations establish a five-step sequential evaluation process to determine if a claimant is disabled.  The Commissioner of the Social Security Administration reviews a disability benefits claim by evaluating the following:

> (1)  Has the claimant been engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

> (2)  Has the claimant's alleged impairment been

15

sufficiently severe to limit his ability to work?
If not, the claimant is not disabled.  If so,
proceed to step three.

(3)   Does the claimant's impairment, or combination of
impairments, meet or equal an impairment listed in
20 C.F.R. Part 404, Subpart P, Appendix 1?  If so,
the claimant is disabled.  If not, proceed to step
four.

(4)   Does the claimant possess the residual functional
capacity to perform his past relevant work?  If
so, the claimant is not disabled.  If not, proceed
to step five.

(5)   Does the claimant's residual functional capacity,
when considered with the claimant's age,
education, and work experience, allow him to
adjust to other work that exists in significant
numbers in the national economy?  If so, the
claimant is not disabled.  If not, the claimant is
disabled.

Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th

Cir. 2006) (citing 20 C.F.R. § 404.1520).

The claimant has the burden of proof at steps one through

four, and the Commissioner has the burden of proof at step five.

Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001).

IV.   **The Administrative Law Judge Reviewed Plaintiff's
      Application By Using The Five-Step Sequential Evaluation**

At Plaintiff's February 24, 2014 administrative hearing, the

Administrative Law Judge ("ALJ") for the Social Security

Administration reviewed Plaintiff's claim by engaging in the

five-step sequential evaluation.

Both Parties agree that there were no errors by the ALJ in

16

the first three steps of the evaluation.

First, the ALJ evaluated if Plaintiff had been engaged in substantial gainful activity during the time she was eligible for disability insurance benefits.

An individual may not receive disability insurance benefits unless the claimant was insured at the time of the onset of the disability.  20 C.F.R. § 404.101.  The alleged onset date of Plaintiff's disability was June 15, 2010, and Plaintiff had insured status until December 31, 2012.  (AR at p. 34, ECF No. 12).

The ALJ evaluated the time period between June 15, 2010 and December 31, 2012, and found that Plaintiff did not engage in substantial gainful activity during that time.  (Id.)

Second, the ALJ found that Plaintiff had the following impairments that limited her ability to work between June 15, 2010 and December 31, 2012: Chiari I type malformation with syringohydromyelia in the entire spinal cord, status post suboccipital decompression, C1 laminectomy, and microdissection with residual nystagmus[4] and right-sided weakness and numbness; cervical spine degenerative disc disease; and migraine headaches. (AR at p. 34).

Third, the ALJ found that Plaintiff did not have an

_____

[4] Nystagmus is an involuntary twitching of the eyeball. See Dorland's Illustrated Medical Dictionary 1249 (29th ed. 2000).

17

impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(d), 404.1525, and 404.1526.  (AR at p. 35).

In this case, Plaintiff's appeal concerns the ALJ's decision regarding step four in the evaluation process.

The Plaintiff challenges the ALJ's determination that between June 15, 2010 and December 31, 2012, she had the residual functional capacity to perform work that she had previously performed.

## V.   The ALJ Properly Denied Plaintiff's Application For Disability Benefits At Step Four Of The Social Security Administration's Sequential Process

The ALJ denied Plaintiff's application for Disability Benefits at step four of the five-step disability determination process.  At step four, the claimant has the burden of showing that she suffered from a disability that lasted or is expected to last at least twelve months such that she was unable to perform her past relevant work.  20 C.F.R. § 404.1520(f); Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001).

In this case, Plaintiff asserted that she became disabled on June 15, 2010.  Plaintiff was insured for disability insurance until December 31, 2012.  Plaintiff was required to demonstrate that she suffered from a disability between June 15, 2010 and

18

December 31, 2012 that was severe enough to prevent her from engaging in substantial gainful work.  Barnhart v. Walton, 535 U.S. 212, 218-19 (2002); Flaten v. Sec. of Health & Hum. Srvs., 44 F.3d 1453, 1459-60 (9th Cir. 1995).

If within a twelve month period following the disability, the claimant was able to do any work she did in the past, the claimant is not disabled and is not entitled to disability insurance benefits.  Barnhardt, 535 U.S. at 222-23; Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The ALJ determined that within a year of Plaintiff's June 25, 2010 surgery, she had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following exceptions:

> [S]he should have the option to alternate between sitting and standing at will; cannot sit or stand longer than 30 minutes at a time; and is limited to occasional pushing or pulling with the right upper extremity and right lower extremity; occasionally reaching overhead with the right upper extremity; frequently handling, fingering, grasping, gripping, and feeling on the right; never kneeling, crouching, crawling, or climbing ladders, ropes, or scaffolds; occasionally climbing ramps or stairs, balancing, or stooping; focusing in front of her but not moving her eyes only to see right, left, up, or down; and no exposure to hazards.  She is likely to be off-task up to 10% of the workday and be absent for six days a year.

(AR at p. 35, ECF No. 12).

The ALJ determined that Plaintiff's past relevant work was defined pursuant to the Dictionary of Occupational Titles as a

daycare teacher (DOT 092.227-018, light), telemarketer (DOT 299.357-014, sedentary), and administrative clerk (DOT 219.362-010, light).  (AR at p. 41, ECF No. 12).

The ALJ found that Plaintiff did not demonstrate that she was unable perform her past work given the limitations set forth in her residual functional capacity.  (AR at pp. 41, 89-91).  The ALJ relied, in part, on the vocational expert who testified that Plaintiff's past positions did not have restrictions beyond Plaintiff's residual functional capacity as they allowed a claimant to alternate between sitting and standing as needed. (AR at pp. 89-91, ECF No. 12).  Specifically, the vocational expert testified, based on her thirty years' experience, that the telemarketer position would be provided with headphones to allow the individual to alternate between sitting and standing.  (AR at p. 91, 93, ECF No. 12).

The vocational expert testified that even if Plaintiff could not perform her past work, someone with her residual functional capacity could perform work as an assembler (DOT 706.684-022, light), inspector (DOT 559.687-074, light), and marker (DOT 209.587-.034, light).  (AR at pp. 41-42, 90-91, ECF No. 12).

The ALJ ultimately determined, based on the testimony and medical evidence, that Plaintiff had the residual functional capacity to perform light work with some limitations but that the limitations would not have prevented her from performing her past

work as a telemarketer, administrative clerk, or daycare teacher. (AR at pp. 41-42, ECF No. 12).

Plaintiff challenges the ALJ's decision at step four of the evaluation process on three grounds.

First, Plaintiff argues that the ALJ did not provide clear and convincing reasons for rejecting her testimony about the severity of her symptoms and inability to work.

Second, Plaintiff argues that the ALJ did not provide clear and convincing reasons for rejecting the conclusion from her neurologist, Dr. Devere, stating that Plaintiff "is unable to work."

Third, Plaintiff argues that the ALJ did not provide clear and convincing reasons for rejecting evidence from Plaintiff's primary care physician, Dr. Fong, who wrote a letter stating that she agreed with Dr. Devere's conclusions and stated that Plaintiff was disabled.

**A.  The ALJ Did Not Err In Declining To Credit Plaintiff's Testimony As To The Severity Of Her Symptoms And Her Claimed Inability To Work**

An individual's statement is not necessarily treated as conclusive evidence of disability.  42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(a).

The claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be

expected to produce some degree of symptom.  Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  An ALJ may discredit the claimant's testimony about the severity of her symptoms by offering specific, clear and convincing reasons for doing so. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ may consider many factors in weighing a claimant's credibility, including evaluating inconsistent statements concerning the claimant's symptoms against evidence of the claimant's participation in daily activities, and unexplained or inadequately explained failure of the claimant to seek treatment or to follow a prescribed course of treatment.  Tommasetti, 533 F.3d at 1039.

The ALJ's credibility findings must be sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

Here, the ALJ made specific, clear and convincing findings to discredit Plaintiff's testimony as to the severity of her symptoms and her claimed inability to work.

### 1.   The ALJ Made Specific Findings That Plaintiff's Testimony Was Inconsistent

The ALJ found that Plaintiff's testimony regarding the severity of her symptoms resulting from her spinal cord conditions, including claimed balance problems, migraines, and

eye twitching, was undermined by her testimony regarding her participation in daily activities.  (AR at pp. 38-39, ECF No. 12).

An ALJ may properly reject a claimant's testimony about the severity of her disability when it conflicts with her own testimony about her ability to care for her personal needs, cook, clean, shop, manage her finances, and interact with others. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).

Plaintiff testified that she was involved in a wide range of activities.  Plaintiff testified that she is the wife of a pastor, is involved in the decision-making of the church, and occasionally leads a Bible study group.  (AR at pp. 69-70, ECF No. 12).

The ALJ stated,

Despite her subjective symptoms and difficulties, the claimant was able to care for her two minor children, a potentially physically and emotionally demanding task –including "everything involved w[ith] child-rearing," such as bathing, feeding, reading, overseeing outside play, and taking them to the beach or park—with help a few times a month from friends and her husband.  She was able to perform independent personal care without problems, prepare meals daily, do light cleaning and light laundry, vacuum, use the dishwasher, take public transportation, drive short distances during the day, run errands, shop in stores for necessities, handle her finances, attend church weekly and play an "active role," attend biweekly music practice, go to the library and park weekly, and play the piano and sing at least once a week.

(AR at p. 39, ECF No. 12).

The ALJ also relied on the fact that Plaintiff testified

23

that she homeschooled her six year-old child.  (AR at pp. 39, 68-69, ECF No. 12).  Plaintiff testified that she homeschooled her child, which required her to read, use the computer, and supervise the child, even though she claimed to be unable to work based on difficulties with her vision and concentration.  (AR at pp. 68-69, ECF No. 12).

Plaintiff testified that she had problems using her right hand.  (Id. at p. 57).  Plaintiff's testimony was undermined by her testimony that she is able to play the piano for twenty minutes at a time.  (Id. at p. 70).

Plaintiff testified that she continued to have trouble functioning almost four years after her June 2010 surgery.  (Id. at p. 57).  Despite her testimony, Plaintiff stated that she was able to travel to the mainland on family vacations twice in 2011, within months after her surgery.  (Id. at p. 86).  Plaintiff testified that she traveled to the mainland again in January 2012.  (Id.)

The ALJ relied on Plaintiff's testimony about her ability to engage in a wide range of daily activities and home tasks such as doing laundry, making beds, cleaning, and taking care of her children.  The wide ranging activities did not support Plaintiff's testimony that her symptoms were so severe that she could not work.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).  Even if a claimant's daily activities suggest some

24

difficulty functioning, the ALJ does not err in rejecting the claimant's allegations of a totally debilitating impairment. Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (citing Turner v. Cmm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010)).

In addition, the ALJ found that Plaintiff was not credible because there was evidence that Plaintiff was not working for reasons unrelated to her alleged disability. (AR at p. 39, ECF No. 12). Plaintiff stopped working in 2007 in order to take care of her children. (Id.) There was no evidence that Plaintiff ever sought to return to work between 2007 and her alleged onset date of disability on June 15, 2010.

The ALJ did not err in declining to credit Plaintiff's testimony that she was unable to work due to her alleged disability when there was evidence that Plaintiff had voluntarily chosen not to work prior to her alleged disability onset date. Harrelson v. Astrue, 273 Fed. Appx. 632, 634 (9th Cir. 2008); Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001); Drouin v. Sullivan, 966 F.2d 1255, 1258-59 (9th Cir. 1992).

### 2. The ALJ Made Specific Findings About Plaintiff's Failure To Adequately Explain Her Refusal To Follow A Recommended Course Of Treatment

An unexplained failure to seek treatment or follow a prescribed course of treatment can support an ALJ's credibility

25

determination.  <u>Fricke v. Astrue</u>, 2012 WL 2395178, *7 (W.D. Wash.
June 25, 2012) (citing <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir.
1989)).

Plaintiff testified that she had migraine headaches that
prevented her from working since June 15, 2010.  (AR at p. 58,
ECF No. 12).  Plaintiff stated that her treating physicians had
recommended that she try different prescriptions to treat her
headaches but she has been unwilling to try any new medications.
(AR at pp. 59-61, ECF No. 12).  Plaintiff testified, as follows,

> Q:  And so two times a week very severe
>     headaches, where you're not able to keep
>     doing what you're doing?
>
> A:  Yes.
>
> Q:  Have you told your doctors that?
>
> A:  Yes.
>
> Q:  And what have they done about it, anything?
>
> A:  They've offered to have me try different
>     medications, I didn't really want to take
>     antidepressants, they offered that.  They've
>     offered narcotics, which I didn't feel safe
>     taking medications that I could be addicted
>     to so, really, they're doing all they can.
>
> Q:  And why didn't you want to take an
>     antidepressant?
>
> A:  Because it can become habit forming.  And the
>     one I did try, I felt very depressed with it,
>     it didn't like — it didn't make me feel good.
>
>     ...
>
> Q:  I'm going to ask you again, why not if it
>     possibly could help?  And I understand that

one of them did not help you and it made you feel worse but why not try other medications that might take your headaches away or lessen?

A:    When I talked to Dr. Devere, the neurologist, he said it's possible that it would work but I mean, they're all in the same class.  He didn't feel very confident that it would — I mean, if I'm okay on Butalbital and my pain is at least okay, I just didn't really want to do that.

Q:    Okay.  Okay but two days out of the week your headaches are so severe that you testified you can't do anything.

A:    Right.

Q:    So, my question is why not try a medication that might help you do things every day of the week?

A:    I guess I've been afraid to, I don't really have an answer.

(AR at pp. 60-61, ECF No. 12).

The ALJ properly found that Plaintiff's failure to adequately explain her failure to follow recommended medical treatment undermined her credibility.  In situations where medication has been shown to be effective but the patient refuses to avail herself of the treatment offered, that fact alone allows a determination that the impairments that could be so treated are not disabling.  Blackwell v. Colvin, 2016 WL 4702823, *5 (E.D. Cal. Sept. 7, 2016) (citing Warre v. Commissioner, 439 F.3d 1001, 1006 (9th Cir. 2006)).

27

### 3. The ALJ Made Specific Findings That Plaintiff's Testimony As To The Severity Of Her Symptoms Was Inconsistent With Objective Medical Evidence In The Record

The ALJ found that the Plaintiff's credibility regarding the disabling degree of her symptoms was undermined by the objective medical evidence. (AR at p. 39, ECF No. 12). The documented objective medical evidence stated that Plaintiff's headaches were tolerable and manageable. (AR at p. 1634). Plaintiff's medical records stated that she had a steady gait and generally normal clinical findings, and normal bulk, tone and strength in her extremities. (AR at p. 106, 1634-37). Garza v. Astrue, 380 Fed. Appx. 672, 673 (9th Cir. 2010) (affirming the ALJ's discrediting of the claimant's testimony as to the severity of her leg pain where the claimant's gait and sensory and motor exams were normal).

The ALJ determined that Plaintiff's statements regarding her migraine headaches were inconsistent as she testified on February 24, 2014, that she had severe migraines twice a week but told her neurologist on February 10, 2014, that she had bad headaches only twice a month. (AR at pp. 39, 1824, ECF No. 12).

The ALJ discounted Plaintiff's testimony that she had consistent problems with balance as she testified that she did not use a cane to walk, suggesting Plaintiff's balance issues were not sufficiently severe. (AR at p. 39, ECF No. 12).

28

The ALJ also found that Plaintiff's testimony was undermined because she did not see her treating neurologist between November 2013 and February 2014, suggesting that her symptoms were not consistent enough to require more frequent follow-up appointments.  (AR at p. 1814, ECF No. 12).

The ALJ properly discounted Plaintiff's credibility by citing the conflicts between her subjective complaints and the objective medical evidence documenting her improvement following her June 2010 surgery.  Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999).

### B.    The ALJ Did Not Err In Declining To Credit The Conclusions Of Plaintiff's Neurologist, Dr. Devere

Plaintiff argues that the ALJ erred because she did not provide sufficient reasons for rejecting some of the conclusions of Dr. Todd Devere.  (Opening Brief at p. 10, ECF No. 14).

On February 10, 2014, Dr. Devere completed a questionnaire about Plaintiff's physical limitations.  (AR at pp. 1679-84, ECF No. 12).  Dr. Devere concluded that Plaintiff could lift up to twenty pounds occasionally, sit for two hours, stand for fifteen minutes, and walk for ten minutes without interruption in an eight-hour workday.  (AR at p. 1680, ECF No. 12).  Dr. Devere found that Plaintiff could perform manipulative activities occasionally with her right arm and frequently with her left arm and that Plaintiff could operate foot controls occasionally with

29

her right foot and frequently with her left foot.  (AR at p. 1681, ECF No. 12).

Dr. Devere's findings that Plaintiff had some physical limitations did not support his final conclusion that Plaintiff "is not able to work."  (AR at p. 1684, ECF No. 12).

The ALJ afforded some weight to Dr. Devere's conclusions as to the physical limitations of Plaintiff, specifically crediting his determinations that use of her right extremities was limited to occasional use.  (AR at pp. 39-40, ECF No. 12).  The ALJ discredited Dr. Devere's conclusion that Plaintiff was unable to work at all because it was inconsistent with objective medical evidence in the record.  Thomas, 278 F.3d at 957 (finding that the ALJ is not required to accept the opinion of any physician, including a treating physician, if that opinion is not supported by clinical findings).

The objective clinical findings in the record demonstrated that following Plaintiff's discharge from the hospital on June 30, 2010, Plaintiff was stable, able to ambulate, and was alert and oriented.  (AR at pp. 521, 995, ECF No. 12).  Follow-up examinations in July 2010, August 2010, September 2010, December 2010, March 2011, and May 2011, demonstrated that Plaintiff had continued improvement with consistent, stable and unassisted gait, full muscle strength, intact reflexes, intact range of motion, and largely intact coordination and cranial nerve

functioning.  (AR at pp. 38, 40, 1156, 1163-67, 1254, 1261, 1268, 1286-87, ECF No. 12).  Additional examinations in 2012 continued to make objective findings that Plaintiff was improving and stated that Plaintiff appeared well, alert, and oriented.  (AR at pp. 1321, 1355-56, 1621, ECF No. 12).

Plaintiff's surgeon found on examination in June 2011 that Plaintiff's June 2010 procedure had markedly improved her conditions.  (AR at pp. 1623-24, ECF No. 12).  The State agency medical consultants, Dr. Richey and Dr. Blakowski, found that Plaintiff could perform light work with limited pushing and pulling in the right upper extremity and limits to climbing, stairs, balancing, and stooping.  (AR at pp. 106, 121, ECF No. 12).

The ALJ properly relied on the findings of the Plaintiff's surgeon and the State agency medical doctors which were based on objective clinical findings.  Those findings supported the ALJ's rejection of the inconsistent conclusions asserted by Dr. Devere. Hensley v. Colvin, 600 Fed. Appx. 526, 527 (9th Cir. 2015).

Dr. Devere's finding in February 2014 that Plaintiff was unable to work was inconsistent with his own objective clinical findings made in August 2012.  In August 2012, Dr. Devere found that Plaintiff had improvement in the conditions affecting her spinal column, and he determined that her remaining symptoms, such as headaches, were being properly treated with medication.

(AR at pp. 1634-36, ECF No. 12).

The ALJ did not err in declining to credit Dr. Devere's February 2014 conclusions that were inconsistent with objective medical findings, including his own previous findings. Tommasetti, 533 F.3d at 1041 (finding the ALJ properly rejected a treating physician's opinion regarding the claimant's limitations that "did not mesh with her objective data or history").

The ALJ properly discounted Dr. Devere's conclusions that were based solely on the Plaintiff's own subjective complaints. The ALJ may discredit a treating physician's opinion that is premised solely on a claimant's own report.  Fair, 885 F.2d at 602-03.  The ALJ may properly discredit Dr. Devere's conclusions concerning the persistence and severity of Plaintiff's limitations when they conflict with Plaintiff's own testimony about her participation in everyday activities.  Molina, 674 F.3d at 1113 (citing Morgan, 169 F.3d at 600)).

> **C.    The ALJ Did Not Err In Declining To Credit The Conclusions Of Plaintiff's Primary Care Physician, Dr. Fong**

Plaintiff argues that the ALJ erred because she did not provide sufficient reasons for rejecting some of the conclusions of Dr. Carolyn Fong.  (Opening Brief at p. 18, ECF No. 14).

On February 13, 2014, Plaintiff's primary care physician, Dr. Carolyn Fong, wrote a letter as to Plaintiff's physical

condition.   The entirety of the letter is as follows:

> I saw and examined Mrs Kenda J Butler on 2/11/14.   I
> completely agree with Dr Todd Devere's assessment that
> this patient is disabled due to her medical conditions.

(AR at p. 1686, ECF No. 12).

An ALJ may discredit treating physicians' opinions that are
conclusory, brief, and unsupported by the record as a whole or by
objective medical findings.   Batson v. Comm'r of Soc. Sec.
Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).

Dr. Fong's opinion is brief and conclusory.   There is no
basis to review much of Dr. Fong's opinion as there are no
clinical findings, explanations, or objective data.   The ALJ did
not err in discreting Dr. Fong's opinion because it was not
supported by findings of Dr. Fong or by the record as a whole.
(AR at p. 40, ECF No. 12).

The opinions of Dr. Devere and Dr. Fong that Plaintiff is
disabled and unable to work are inconsistent with the opinions of
Plaintiff's surgeon, the State agency medical doctors, and the
objective medical findings in the record.   (AR at pp. 106, 121,
521, 995, 1156, 1286-87, 1163-67, 1254, 1268, 1287, 1321, 1355,
1621-24, ECF No. 12).

The ALJ did not err in rejecting the opinion of Dr. Fong to
the extent that it was based to a large extent on Plaintiff's
self-reports that have been properly discounted as not credible.
Tommasetti, 533 F.3d at 1041.

33

The ALJ also properly declined to credit Dr. Fong's February 2014 opinion to the extent it was inconsistent with her earlier assessment of Plaintiff in March 2013.  In March 2013, Dr. Fong issued a letter to Plaintiff stating that she was restricted from driving at night.  (AR at p. 1677, ECF No. 12).  The March 2013 letter did not specify any additional limitations in Plaintiff's activities to suggest that she was completely disabled or unable to work.

The ALJ properly reasoned that Dr. Fong's opinion was worthy of little weight because "within this time, Dr. Fong found the claimant's condition to have worsened considerably, although there is little evidence in the record to support such worsening and no evidence that Dr. Fong examined the claimant before she issued her opinion."  (AR at p. 40, ECF No. 12).

The ALJ did not err in declining to credit Dr. Fong's conclusion that Plaintiff was disabled.  Dean v. Comm'r of Soc. Sec., 504 Fed. Appx. 563, 565 (9th Cir. 2013) (finding that the ALJ properly rejected the treating doctor's findings because he submitted a standardized form rather than objective medical findings.  The Doctor appeared to rely primarily on subjective reporting and his findings were inconsistent with those of the State's physicians).

The Court has reviewed the entire record and finds that there is substantial evidence to support the ALJ's decision.

34

## <u>CONCLUSION</u>

The Commissioner of Social Security Administration's decision is **AFFIRMED**.

The Clerk of Court is Ordered to **CLOSE THE CASE**.

IT IS SO ORDERED.

DATED: November 16, 2016, Honolulu, Hawaii.



_____

Helen Gillmor
United States District Judge

<u>Kenda J. Butler v. Carolyn W. Colvin, Social Security</u>
<u>Administration Commissioner</u>; Civ. No. 15-00466 HG-KSC; **ORDER**
**AFFIRMING THE DECISION OF THE SOCIAL SECURITY ADMINISTRATION**
**COMMISSIONER**

35